# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| MARCO A. MICHALSKI et al. | : | CASE NO. |
| Plaintiffs, | : | 3:16-cv-2039 (VAB) |
| | : | |
| v. | : | |
| | : | |
| SEMPLE, et al., | : | |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

On December 13, 2016, Marco A. Michalski and Patrick S. Camera (collectively "Plaintiffs") initiated this action under 28 U.S.C. § 1983 against twenty-nine individuals from the Connecticut Department of Correction ("DOC"): Commissioner Scott Semple, Assistant Deputy Commissioner Monica Rinaldi, Warden Scott Erfe, Deputy Warden Richard Laffargue, Reverend Anthony Bruno, Imam Shamma, Unit Manager Valeriano, Captain Torres, Captain Bailey, Correction Officer Williams, Correction Officer Mataos, Correction Officer Milio, Correction Officer Yaharey, Correction Officer St. John, Correction Officer Tello, Correction Officer Edwards, Correction Officer Sterno, Correction Officer Lawler, Correction Officer Viska, Correction Officer Robinson, Correction Officer "John Doe," Correction Officer King, Correction Officer Buckland, Correction Officer Little, Correction Officer Rowald, Correction Officer Ellis, Correction Officer Whitehead, Correction Officer Lopes, and Correction Officer Salgado (collectively "Defendants"). ECF No. 1. Plaintiffs are suing all Defendants in their individual and official capacities for violating Plaintiffs' rights guaranteed under the First, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

On December 22, 2016, the Court granted Michalski's motion to proceed *in forma pauperis*. ECF No. 7. Despite two notices, Camera never filed a sufficient application to proceed

*in forma pauperis*. ECF No. 8; ECF No. 13. In accordance with the Court's Order on March 17, 2017, Camera is **DISMISSED** as a party to this action. *See* ECF No. 13.

On July 24, 2017, the Court accepted Michalski's Amended Complaint, ECF No. 17, removing Camera from the case along with defendants Torres, Bailey, Doe, Little, and Rowald, whose alleged actions solely related to Camera. Mot. to Amend Compl, ECF No. 16. The Court therefore will dismiss defendants Torres, Bailey, Doe, Little and Rowald from this case and review the amended complaint against the remaining defendants pursuant to 28 U.S.C. § 1915A.

For the reasons that follow, defendants Torres, Bailey, Doe, Little, Rowald, and Salgado are **DISMISSED** as defendants to this action. Michalski's Motions to Proceed and Commence Service, ECF No. 14, 22, are **DENIED** as moot.

Michalski's claims for monetary damages against all defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(2). Michalski's retaliation claims are **DISMISSED** without prejudice. Michalski's Fifth and Eighth Amendment claims are also **DISMISSED**.

Michalski's First Amendment Free Exercise and Establishment Clause claims may proceed against defendants Semple, Rinaldi, Bruno, Shamma, Erfe, Laffargue, Valeriano, Williams, Mataos, Milio, Yaharey, St. John, Tello, Ellis, Edwards, Sterno, Lawler, Viska, Robinson, Lopes, King, Buckland, and Whitehead in their individual capacities for monetary relief and in their official capacities for declaratory and injunctive relief. Michalski's RLUIPA claims may proceed against those same defendants in their official capacities for injunctive relief only. The Fourteenth Amendment Equal Protection Clause claims may proceed against Semple, Rinaldi, Bruno, Shamma, Erfe and Laffargue in their individual capacities for monetary relief and in their official capacities for declaratory and injunctive relief.

# I.    ALLEGED FACTUAL BACKGROUND

Michalski alleges he is a devout Native American, who is and was at all times relevant to this matter, incarcerated at Cheshire Correctional Institution ("Cheshire CI") in Cheshire, Connecticut. The DOC allegedly employs only two Native American elders to conduct religious services for Native American inmates, and these services are alleged to be held only once per week, while services for other religious denominations are held anywhere from three to seven times weekly. Michalski claims that the act of "smudging," a purifying or cleansing technique consisting of burning sacred plants and communal prayer, is central to Native American religious practice. Because it is done without a Native American chaplain, individual smudging, on the other hand, is allegedly not a religious service.

Cheshire CI allegedly limits smudging to those inmates financially capable of purchasing smudging supplies and, therefore, denies indigent inmates the ability to smudge. In other facilities, Native American chaplains allegedly provide smudging supplies to all Native American inmates. DOC allegedly permits inmates designated as Native American to individually smudge and purchase smudge supplies using a restrictive order form. Under Cheshire CI policy, individual inmates are allegedly permitted to smudge once per day by requesting smudge time from their unit manager. Collective smudging was allegedly permitted during regularly scheduled Native American services, but Cheshire CI allegedly has not permitted collective smudging since August 2015. Cheshire CI, however, now conducts Native American Prayer Circle once per week.

Unlike Islamic inmates, who are allegedly permitted to shower before collective prayer services, Native American inmates are allegedly not permitted to "cleanse" or purify themselves prior to prayer. Moreover, DOC allegedly permits inmates to purchase only three herbs for

smudging: sage, cedar and kinnikinnick. DOC prohibits the purchase of tobacco, the most sacred and most important herb for smudging. Defendants Semple, Rinaldi, Bruno, Shamma, Erfe, and Laffargue allegedly dictate or enforce the rules regarding available smudging supplies and ceremonies in the prisons. They also allegedly restrict access to "sweat lodge," another instrumental rite of the Native American religion, to once every two months, whereas other prisons across the country allegedly permit the use of sweat lodge once per week. Moreover, Cheshire CI allegedly provides four Islamic and eleven Christian services per week, but only one weekly Native American service.

While Cheshire CI allegedly provides educational and cultural activities for Catholic and Islamic inmates, such as Bible study, choir, and Qur'an study, it allegedly does not provide any comparable opportunities for Native American inmates. The library at Cheshire CI allegedly has a "spirituality" section, which offers books on Catholicism, Islam, and Christianity, but nothing regarding the Native American religion. Despite allegedly housing over 700 Native American inmates, DOC allegedly provides only one Native American religious article for purchase through commissary, compared to nine Catholic articles, sixteen Islamic articles, and three Jewish articles. Allegedly, under DOC policy, each religious designation shall have no less than two services per month, but, at Cheshire CI, the policy is allegedly routinely ignored for Native American services.

Cheshire CI allegedly suspended Native American religious services from March 2016 to August 2016, due to a chaplain being injured, During that time, Shamma allegedly confiscated Michalski's smudging supplies as "contraband" and only return them several months later. An item allegedly is considered contraband only if it is not approved for purchase through

commissary. Upon returning the items to the "A/P room,"[1] Shamma allegedly warned Michalski that he would confiscate Michalski's smudging supplies again if Michalski did not use them daily. Michalski claims he filed two administrative grievances regarding the suspension of Native American services, but the grievances were allegedly ignored.

Individual smudge call at Cheshire CI allegedly takes place at 5:45 a.m. on weekdays and 4:15 a.m. on weekends and holidays. The correctional officer allegedly assigned to the A/P room is tasked with announcing "smudge call" to all officers in the facility over the radio. The officers allegedly then transport the Native American inmates from their units to the A/P room. The inmates are allegedly provided twenty minutes to smudge before they are returned to their housing units. Although it is allegedly against policy for an inmate to place anything in his cell window, Michalski allegedly often places a small sign in his cell window to remind the officers about smudge call. At times, smudge call allegedly occurs at the same time as "chow call," and Michalski is allegedly then forced to choose between practicing his religion or eating.

On several occasions in August and September of 2016, Defendants Williams, Mataos, Milio, Yaharey, Tello, Edwards, Sterno, Robinson, Viska and Ellis allegedly disregarded the smudge call announcement and denied Michalski the ability to smudge. When Michalski allegedly inquired about whether smudge call was announced, Yaharey and St. John allegedly became "demeaning, hostile, and threatening." Allegedly, Tello also responded to Michalski with "racist comments." On one occasion, Ellis allegedly denied Michalski matches or a cigarette lighter for smudging purposes, allegedly in violation of DOC policy. Michalski allegedly submitted several grievances regarding the denials of smudge call, but allegedly nothing was done about them. Moreover, on September 1, 2016, Whitehead allegedly denied,

---

[1] While the Amended Complaint does not define "A/P room," the Court understand it to mean the Admitting and Processing Room.

without justification, all Native American inmates participating in sweat lodge, including Michalski, their concluding meal, which is an integral part of the sweat lodge ceremony.

On September 16, 2016, Cheshire CI allegedly permitted Native American inmates to celebrate Strawberry Festival, allegedly one of two Native American holidays celebrated with a meal consisting of fresh fruit and vegetables, corn bread, and fresh moose, venison, or buffalo. Before that holiday, Michalski allegedly wrote to Valeriano and Laffargue, requesting that they be permitted to smudge before celebrating the holiday, but Michalski's requests allegedly went unanswered. During the celebration, the DOC staff allegedly denied inmates sufficient time to pray and only provided a cold meal with frozen strawberries, canned vegetables, and processed meat.

In late September and early October 2016, Tello and Lopes allegedly informed Michalski and other Native American inmates that smudge call was cancelled and ordered the inmates to return to their units. Michalski believes that this was done in retaliation for filing grievances regarding the suspension of services and denials of individual smudging. Michalski allegedly wrote letters to defendant Valeriano complaining about the smudge call cancelations but was allegedly "met with answers contradicting [DOC] Native American Smudge Policy" and procedures. On October 14, 2016, Michalski and three other Native American inmates were allegedly subjected to drug testing in "retaliation for the many grievances and complaints" Michalski had filed. A second drug test allegedly followed one month later.

On October 21, 2016, Cheshire CI allegedly permitted Michalski and other Native American inmates to celebrate the Native American holiday of Harvest Festival, which is also traditionally celebrated with a communal meal of fresh fruits, vegetables, and meat. On the way to the auditorium to celebrate Harvest Festival, Michalski allegedly was "met with a strong show

of force" by the correction officers, who treated him in a "demeaning, hostile manner." The officers present at the ceremony allegedly continuously interrupted the prayer services. When the ceremony ended, ten-to-twenty officers allegedly harassed Michalski.

On three occasions in late October 2016, King, Buckland, and Tello allegedly "disregarded" smudge call. In doing so, Buckland allegedly said to Michalski: "I don't care, write me up. I don't have to let you out." On November 7 and 10, 2016, Salgado allegedly made unprovoked "racist comments" to Michalski.

Michalski alleges that he was routinely harassed by various correction officers in the hallways, while returning from smudge call. The officers allegedly would chant, make "bird noises," or issue "stereotypical comments." The alleged denials of smudge call increased after Michalski filed grievances against officers in the facility.

## II.    STANDARD OF REVIEW

The Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."[2] 28 U.S.C. § 1915A(a). The Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint or any of its parts are "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

The Federal Rules of Civil Procedure require that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to

---

[2] A prisoner is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. 28 U.S.C. § 1915A(c).

provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and ... recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

*Pro se* complaints, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III. DISCUSSION

Michalski contends that Semple, Rinaldi, Bruno, Shamma, Erfe and Laffargue violated Michalski's First Amendment right to the free exercise of religion, his Fourteenth Amendment right to equal protection of the laws and his Eighth Amendment right of protection against cruel

and unusual punishment, in addition to violating the First Amendment's Establishment Clause or the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by suspending Native American religious services from March 2016 to August 2016, denying collective smudging, restricting access to the sweat lodge and Native American smudging supplies, including the sacred pipe, providing an unequal number of religious chaplains and literature in DOC facilities, denying equal access to "educational and culturally enriching opportunities" for Native American inmates, and denying "fresh traditional foods" for celebration of the Strawberry and Harvest Festivals.

Michalski also claims that Valeriano, Williams, Mataos, Milio, Yaharey, St. John, Tello, Ellis, Edwards, Sterno, Lawler, Viska, Robinson, Lopes, King, Buckland, Erfe, Laffargue, Semple, and Rinaldi violated Michalski's rights under the Free Exercise Clause, Eighth Amendment, and RLUIPA by denying him individual smudging on several occasions and that defendant Whitehead violated the Free Exercise Clause and Eighth Amendment by denying him participation in sweat lodge.

Michalski further claims that defendant Shamma violated the Free Exercise Clause and Eighth Amendment by confiscating his smudge supplies.

Finally, Michalski claims that "[t]he campaign of harassment and retaliation for utilizing the prison grievance system by the defendants" violated his First, Fifth, Eighth, and Fourteenth Amendment rights.

Michalski seeks declaratory relief, injunctive relive in the form of specific services for Native American inmates and compensatory and punitive damages in the amount of $20,000 against each defendant.

## A.  Monetary Damages

A claim against an individual in that individual's personal capacity "seek[s] to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In contrast, a claim against an individual in that individual's official capacity, "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Id.* 165–66 (citing *Monell v. New York City Dept. of Soc. Services,* 436 U.S. 658, 690, n. 55 (1978)). "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* at 166. Absent consent from a state, the Eleventh Amendment bars damages claims against it or entities constituted under its authority. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit.").

Because Defendants are alleged to be Connecticut Department of Correction employees, to the extent that Michalski seeks money damages from Defendants in their official capacities, those claims are barred by the Eleventh Amendment. *See Graham*, 473 U.S. at 165–66; *Quern*, 440 U.S. at 342. 28 U.S.C. § 1915A(b)(2) requires the Court to dismiss all such claims against Defendants. *See id.* ("On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if the complaint . . . seeks monetary relief from a defendant who is immune from such relief.").

### B.  First Amendment and RLUIPA Claims

Michalski claims that the defendants violated his rights under the First Amendment in the following ways.

First, he argues that defendants Semple, Rinaldi, Bruno, Shamma, Erfe, and Laffargue violated his right to freely exercise his religion, the Establishment Clause of the First

Amendment, and RLUIPA by suspending Native American prayer services from March to August 2016, denying collective smudging, restricting smudging supplies, employing an unequal amount of Native American chaplains, providing an unequal amount of religious literature and educational opportunity, denying Michalski access to the sweat lodge ceremony and the sacred pipe, and denying adequate ceremonial foods for the two Native American holidays.

Second, he claims that Semple, Rinaldi, Erfe, Laffargue, Valeriano, Williams, Mataos, Milio, Yaharey, St. John, Tello, Ellis, Edwards, Sterno, Lawler, Viska, Robinson, Lopes, King and Buckland violated his free exercise right and RLUIPA by denying him the ability to smudge on several occasions.

Third, Michalski claims that Whitehead violated his free exercise rights by denying him participation in the sweat lodge ceremony. Fourth, he claims that Shamma violated his free exercise right by confiscating his smudge supplies. Finally, in violation of the First Amendment, "the defendants" retaliated against him for availing himself of the prison grievance system by harassing and threatening him.

### 1. Free Exercise of Religion

The First Amendment provides that Government "shall make no law prohibiting the free exercise" of religion. U.S. Const. amend. I.; *see also Cantwell v. State of Connecticut*, 310 U.S. 296, 303 (1940) (incorporating the Free Exercise Clause as binding on the states by way of the Fourteenth Amendment's guarantee of due process). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). "[T]he Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "Balanced

against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588 (internal quotation marks omitted). Therefore, a prisoner's free exercise claim is "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id*. (internal quotation marks omitted). A challenged government action "passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks omitted).

The Second Circuit has not fully decided the requirements for a prisoner to state a plausible free exercise claim. In *Salahuddin*, the Second Circuit held that, to state such a claim, "[t]he prisoner must show at the threshold that the disputed conduct substantially burden[ed] his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75. In evaluating whether the prisoner has made that showing, a court does not "evaluate the objective reasonableness of the prisoner's belief." *Ford*, 352 F.3d at 590. Rather, the Court's "scrutiny extends only to whether [the prisoner] sincerely holds a particular belief and whether the belief is religious in nature." *Id.* (internal quotation marks omitted).

More recently, however, the Second Circuit expressed doubt as to whether the prisoner must make this threshold showing. *See Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.") (internal quotation marks omitted); *see also Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (declining to apply substantial burden test).

If the prisoner states a plausible free exercise claim, the defendant then bears the limited burden of showing that the challenged conduct is reasonably related to legitimate penological interests. *Salahuddin*, 467 F.3d at 275; *accord Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). "[T]he burden remains with the prisoner to show that these [articulated] concerns were irrational." *Id*. (internal quotation marks omitted).

Construing his complaint liberally, it appears Michalski has stated plausible free exercise claims against Semple, Rinaldi, Bruno, Shamma, Erfe, Laffargue, Valeriano, Williams, Mataos, Milio, Yaharey, St. John, Tello, Ellis, Edwards, Sterno, Lawler, Viska, Robinson, Lopes, King, Buckland, and Whitehead. He alleges that these defendants interfered with his ability to smudge, "the most instrumental practice in the Native American religion," by suspending Native American prayer services from March to August 2016, denying collective and individual smudging, and restricting access to smudge supplies such as matches and sacred pipes. *See Cutter*, 544 U.S. at 720 ("The exercise of religion often involves not only belief and profession but the performance of physical acts such as assembling with others for a worship service or participating in sacramental use of bread and wine." (internal citation omitted)); *Goode v. Bruno*, 10 Civ. 1734 (SRU), 2013 WL 5448442, *6 (D. Conn. Sep. 30, 2013) ("Plaintiff identifies the right at issue as his First Amendment right to possess objects, participate in ceremonies and observe holidays that are part of his sincerely held religious beliefs and necessary to practice his religion.").

Michalski also claims that Semple, Rinaldi, Bruno, Shamma, Erfe, Laffargue and Whitehead interfered with his ability to practice his Native American religion by restricting his access to the sweat lodge ceremony and failing to provide adequate food to celebrate Native

American holidays. *See Salahuddin*, 467 F.3d at 276 (noting that the parties did not dispute that plaintiff prisoner stated a plausible substantial burden on plaintiff's free exercise of religion by alleging that defendants denied him religious meals in his cell); *Ford*, 352 F.3d at 594 (noting that a factual issue existed as to whether the inmate's participation in a religious feast was central to that religion); *McEachin v. McGinnis*, 357 F.3d 197, 203 (2d Cir. 2004) ("It is nevertheless worth noting that courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."); *Benjamin v. Coughlin*, 905 F.2d 571, 579 (2d Cir. 1990) ("Prisoners have a right to receive diets consistent with their religious scruples.").

Michalski's free exercise claims may proceed against the above-mentioned defendants in their individual and official capacities.

### 2. Establishment Clause

Michalski alleges that Semple, Rinaldi, Bruno, Shamma, Erfe, and Laffargue suspended Native American services for several months, denied collective smudging, restricted access to the sweat lodge ceremony, denied adequate ceremonial foods, and provided an unequal amount of chaplains, supplies, literature and educational opportunities when compared to other religions, in violation of the First Amendment's Establishment Clause.

The First Amendment of the Constitution provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I; *see also Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15 (1947) (incorporating the Establishment Clause as binding on the states by way of the Fourteenth Amendment's guarantee of due process). In deciding an Establishment Clause claim, the Second Circuit applies the three-part test articulated in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *See Bronx Household of Faith v. Bd. Of Educ. of City of New*

*York*, 650 F.3d 30, 40 n. 9 (2d Cir. 2011) ("Although the Lemon test has been much criticized, the Supreme Court has declined to disavow it and it continues to govern the analysis of Establishment Clause claims in this Circuit"). Under *Lemon*, "government action which interacts with religion (1) must have a secular purpose; (2) must have a principal or primary effect that neither advances nor inhibits religion; and (3) must not foster an excessive government entanglement with religion." *Bronx Household of Faith*, 650 F.3d at 40 (internal quotation marks omitted).

Like free exercise claims, prisoners' establishment of religion claims are tempered by *Turner*'s reasonableness test. *See* 482 U.S. at 89 ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); *Rossi v. Fishcer*, 13 Civ. 3167 (PKC), 2015 WL 769551, *12 (S.D.N.Y. Feb. 24, 2015) ("[A] prison regulation that impinges on an inmate's constitutional rights is nevertheless valid if it is reasonably related to legitimate penological interests."). Thus, the challenged government action is valid if it reasonably relates to legitimate penological interests.

Since the Court has determined that Michalski has pled a plausible free exercise claims, it will allow the Establishment Clause claims to proceed for now and reassess at a later stage of this case. *See Rossi*, 2015 WL 769551, *11 ("Where plaintiff has plausibly alleged a free exercise violation, the Court need not decide at this time whether plaintiff also states a claim under the Establishment Clause . . . ." ); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) ("[A] district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (internal quotation marks omitted)).

### 3. RLUIPA

Michalski has plead that the defendants violated RLUIPA by denying individual and collective smudging, suspending Native American prayer services, and denying access to smudge supplies, ceremonial food, and the sweat lodge ceremony. His RLUIPA claims may proceed.

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . unless the government demonstrates that imposition of the burden . . .is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *accord Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015). Congress enacted RLUIPA to provide greater protection for religious exercise than is available under the Free Exercise Clause of the First Amendment. *Holt*, 135 S. Ct. at 859-60; *Holland*, 758 F.3d at 224 (stating that RLUIPA provides a more stringent standard than First Amendment).

"A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The Second Circuit, however, has held that RLUIPA "does not authorize monetary damages against state officers in either their official or individual capacities." *Holland*, 758 F.3d at 224; *accord Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013). Thus, a plaintiff may only obtain injunctive relief as a remedy for a RLUIPA violation.

For the same reasons discussed above, *supra* Section III(C)(1), Michalski's RLUIPA claims may proceed against Semple, Rinaldi, Bruno, Shamma, Erfe, Laffargue, Valeriano, Williams, Mataos, Milio, Yaharey, St. John, Tello, Ellis, Edwards, Sterno, Lawler, Viska,

Robinson, Lopes, King, Buckland, and Whitehead in their individual and official capacities for injunctive relief only.

### 4. Retaliation

Michalski alleges that he was retaliated against for filing grievances complaining of constitutional violations. On the facts as plead and liberally construed, the Complaint fails to state a claim of retaliation.

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, 11-cv-631 (SRU), 2012 WL 2716355 *6 (D. Conn. 2012). "To prevail on a First Amendment retaliation claim, an inmate must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland*, 758 F.3d at 225 (internal quotation marks omitted (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009))). The inmate bears the burden of showing that "the protected conduct was a substantial and motivating factor in the prison officials' disciplinary decision." *Id.* at 225 (internal quotation marks omitted).

Michalski alleges that he used the prison grievance system to complain about alleged constitutional violations, which irrefutably constitute protected activity. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("This court has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("Prisoners. . . have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.").

At the pleading stage, Michalski must "give the defendant[s] fair notice of what the claim is and the [factual] grounds upon which it rests." *Twombly*, 550 U.S. at 554. Michalski alleges that officers would chant and make "bird noises," which allegedly increased in frequency after Michalski allegedly engaged the grievance system. Michalski's "formulaic recitation" of allegations that some defendants engaged in "demeaning, hostile and threatening behavior" "will not due." *Id.* Furthermore, Michalski's claim that Salgado, on two occasion, made unprovoked "racist comments," suffers from the same defect, *see id.*; *Iqbal*, 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks omitted)), but Michalski also fails to allege that Salgado's statements, whatever their contents, were in retaliation for Michalski grieving alleged constitutional deprivations. While the Court makes no judgment about whether Michalski, in fact, endured hostile conduct, for purposes of review under 28 U.S.C. § 1915A, the Complaint must contain more factual detail for his retaliation claim to go forward.

Michalski's allegation that defendants retaliated against him for filing a grievance, fails for another reason. "To state a retaliation claim, the Complaint, having shown conduct protected by the Constitution or federal law, must plead that this conduct was a 'substantial or motivating factor' in the alleged retaliatory conduct." *Riddick*, 2012 WL 2716355, at *6 (quoting *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000). Michalski's Complaint, liberally read, fails to do so.

For example, after Michalski allegedly submitted several grievances regarding the denials of smudge call, which allegedly went unanswered, on September 1, 2016, Whitehead allegedly denied all Native American inmates participating in sweat lodge, including Michalski, their concluding meal. From the Complaint, given the shortage of alleged factual content, even

"construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]," *Sykes*,

723 F.3d at 403, the Court cannot infer that Michalski's alleged grievances were plausibly a

"substantial or motivating factor" for Whitehead's denial of the concluding meal. *Friedl,* 210

F.3d at 85; *see also Riddick*, 2012 WL 2716355 *6 ("Because claims of retaliation are easily

fabricated, the courts consider such claims with skepticism and require that they be supported by

specific facts; conclusory statements are not sufficient.").

Michalski also alleges that he and other Native American inmates were subjected to drug

testing days after he wrote Valeriano a letter complaining about being denied the opportunity to

smudge. Although close in time to the protected conduct, the requirement that Michalski undergo

urinalysis drug testing, standing alone, does not plausibly rise to the level of disciplinary conduct

sufficient for a retaliation claim, namely because "[p]risoners are required to tolerate more

serious conduct than public employees or private citizens before stating a retaliation claim."

*Riddick v. Arnone*, No. 3:11CV631 SRU, 2012 WL 2716355, at *6 (D. Conn. July 9, 2012); *see

also id.* ("[T]he allegedly retaliatory conduct must be sufficiently harsh to deter a similarly

situated inmate of ordinary resolve from exercising his constitutional rights."). Furthermore, the

Complaint does not allege how or if the two other Native American inmates who were allegedly

subject to drug testing with Michalski participate in religious observance or had themselves

grieved DOC's denial of smudging opportunities.

For the foregoing reasons, Michalski's retaliation claims must be dismissed.

Furthermore, because the Complaint fails to state a plausible retaliation claim against

Salgado, and the Complaint makes no other allegations relating to Salgado, the Court must

dismiss Salgado as a defendant (*see Twombly*, 550 U.S. 555 (noting that Fed. Rule. Civ. P.

8(a)(2) requires a defendant be given "fair notice of what the claim is and the grounds upon which it rests.")

### B. Equal Protection

In this case, Michalski claims that the following actions constituted equal protection violations: (1) the suspension of Native American prayer services from March to August 2016 by Semple, Rinaldi, Bruno, Shamma, Erfe, and Laffargue; (2) the denial of collective smudging by Semple, Rinaldi, Bruno, Shamma, Erfe, and Laffargue; (3) the "unequal access to educational and culturally enriching opportunities" by Semple, Rinaldi, Bruno, Shamma, Erfe, and Laffargue; and (4) the "denial of fresh traditional foods on the Native American holidays" by Semple, Rinaldi, Bruno, Erfe, and Laffargue.

The Court finds that Michalski has failed to plead a viable equal protection claim regarding suspension of Native American prayer services from March to August and denial of certain foods during Native American holidays. Michalski's claims regarding the denial of collective smudging, denying equal access to religious literature and educational opportunities claims may proceed.

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Clause "protects prisoners from invidious discrimination." *Riddick*, 2012 WL 2716355, *3. It does not, however, require identical treatment for each individual; rather, it requires that "all persons similarly situated should be treated alike." *City of Cleburne Tex.*, 473 U.S. at 439. "To state a claim for an equal protection violation, a plaintiff must plausibly allege that he was treated

differently than others similarly situated as a result of intentional or purposeful discrimination." *Rossi*, 2015 WL 769551, *13 (internal quotation marks omitted) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

Regarding the first claim, Michalski acknowledges that the suspension of Native American prayer services from March to August 2016 was due to an injury sustained by one of the Native American elders. He does not allege how, if at all, the suspension constituted disparate treatment "as a result of intentional or purposeful discrimination." *Rossi*, 2015 WL 769551, *13. On the facts as plead and "interpreted to raise the strongest arguments that they suggest," the Complaint does not plausibly plead a claim of disparate treatment regarding DOC's suspension of prayer services from March to August 2016. *See Sykes*, 723 F.3d at 403.

Michalski's second claim regarding the denial of collective smudging plausibly states an equal protection violation. Michalski alleges that, in August 2015, Cheshire CI stopped permitting collective smudging, a cleansing ritual which must take place outside and, instead, restricts Native American inmates to weekly prayer circles indoors. Native American inmates allegedly also have limited access to smudging supplies. In contrast, Michalski alleges that Islamic inmates are permitted to "cleanse" before their prayer services. These allegations, construed liberally, are sufficient to state an equal protection claim against Semple, Rinaldi, Bruno, Shamma, Erfe, and Laffargue and may proceed.

Michalski has stated a plausible equal protection claim against Semple, Rinaldi, Bruno, Shamma, Erfe, and Laffargue for denying equal access to religious literature and educational opportunities. Specifically, Michalski alleges that, while the defendants offer educational groups for inmates of other religious faiths, such as Catholic bible study, Arabic study, and Qur'an study, DOC does not offer any such opportunities for Native American inmates. He further

alleges that the prison library provides literature on Catholic and Islamic religions but nothing pertaining to Native American religious practices. These allegations plausibly state an equal protection claim. *See Ramos v. Dep't of Corr.*, 15 Civ. 1444 (VAB), 2016 WL 740394, *3 (D. Conn. Feb. 24, 2016) (holding that a prisoner stated plausible equal protection claim against prison reverend and Commissioner of Correction for denial of tarot cards to practice Santeria religion when inmates of other religious faiths are permitted to possess items central to their religions).

As for the fourth claim, Michalski has not sufficiently alleged how the denial of certain foods on the Native American holidays amounted to an equal protection violation. While the Equal Protection Clause instructs that "all persons similarly situated should be treated alike," the Complaint nowhere alleges that the DOC accommodates the dietary needs of inmates of other faiths, while denying comparable accommodations to Native American inmates. *City of Cleburne Tex.*, 473 U.S. at 439.

For the foregoing reasons, Michalski's equal protection claims will proceed against Semple, Rinaldi, Bruno, Shamma, Erfe, and Laffargue in their individual and official capacities for the denial of collective smudging and equal access to religious literature and educational opportunities.

### C. Cruel and Unusual Punishment

Michalski claims that the suspension of Native American prayer services, the denial of collective and individual smudging, the confiscation of his smudging supplies, and the repeated harassment he endured from several of the defendants violated his Eighth Amendment protection against cruel and unusual punishment. The Complaint fails to plead a plausible Eighth Amendment violation and the claim must be dismissed.

The Eighth Amendment prohibits "cruel and unusual punishment[]." U.S. Const. amend. VIII; *see also Robinson v. California*, 370 U.S. 660, 667 (1962) (incorporating the Eighth Amendment's prohibition of cruel and unusual punishment as binding on the states by way of the Fourteenth Amendment). "[S]et[ting] constitutional boundaries on the conditions of imprisonment," the Amendment bars "unnecessary and wanton infliction of pain on a prisoner." *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (internal quotations marks omitted). In order to establish an Eight Amendment claim, a prisoner must satisfy two requirements. *Id.* First, the alleged punishment must be objectively and sufficiently serious under contemporary community standards. *Id.* Second, the prison official or officials must have had a "sufficiently culpable state of mind." *Id.* (internal quotation marks omitted).

The alleged suspension of Native American prayer services, denial of collective and individual smudging, confiscation of his smudging supplies and the alleged repeated harassment Michalski endured are insufficient to establish an Eighth Amendment claim. Michalski has not plausibly alleged that the defendants' conduct in suspending prayer services or interfering with his ability to smudge constituted an act of punishment or was done with a culpable state of mind. *see Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (affirming the lower court's dismissal of plaintiff's claim that prison guards called him names and denied him pens did not allege a constitutional violation in part because the complaint did not allege any injury stemming from the denial of pens on one occasion.).

As for Michalski's claims that several of the defendants engaged in "demeaning, hostile [or] threatening behavior" or made "racist comments" to him, such allegations do not rise to the level of cruel and unusual punishment actionable under the Eighth Amendment, especially when Michalski has not alleged any harm that resulted therefrom. *See Morgan v. Ward*, 699 F. Supp.

1025, 1055 (N.D.N.Y. 1988) (hurling of racial epithets at prisoner does not support viable Eighth Amendment claim); *but see Timm v. Faucher*, 16 Civ. 531 (VAB), 2017 WL 1230846, *5 (D. Conn. Mar. 31, 2017) (prisoner's allegation that correction officer "verbally berated and threaten[ed]" her in presence of other correctional staff causing her "severe and foreseeable emotional distress, fear and anguish" sufficiently stated Eighth Amendment claim). For the foregoing reasons, Michalski's Eighth Amendment claims must be dismissed.

### D. Due Process

Michalski claims that, in retaliating against Michalski for engaging the grievance system, several defendants violated his Fifth Amendment rights. The Court finds that this claim is not cognizable under the Fifth Amendment and must be dismissed.

The Fifth Amendment provides: "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. While "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, [] the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without "due process of law." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466–67 (S.D.N.Y. 2009) (finding a due process claim against a city was "properly brought under the Fourteenth Amendment, not the Fifth Amendment"). Michalski has not alleged that a federal official violated his Fifth Amendment rights; nor has he otherwise alleged facts to state a claim under the Fifth Amendment. Accordingly, his Fifth Amendment claim is dismissed.

### IV. CONCLUSION

For the foregoing reasons, Camera is **DISMISSED** as a plaintiff to this action. Defendants Torres, Bailey, Doe, Little, Rowald, and Salgado are **DISMISSED** as defendants to

this action. Michalski's Motions to Proceed and Commence Service, ECF No. 14, 22, are **DENIED** as moot.

Michalski's claims for monetary damages against all defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(2).

Michalski's retaliation claims are **DISMISSED** without prejudice. Michalski's Fifth and Eighth Amendment claims are also **DISMISSED**. Michalski's First Amendment Free Exercise Clause claims may proceed against defendants Semple, Rinaldi, Bruno, Shamma, Erfe, Laffargue, Valeriano, Williams, Mataos, Milio, Yaharey, St. John, Tello, Ellis, Edwards, Sterno, Lawler, Viska, Robinson, Lopes, King, Buckland, and Whitehead in their individual capacities for monetary relief and in their official capacities for declaratory and injunctive relief. The RLUIPA claims may proceed against those same defendants in their official capacities for injunctive relief only. The Fourteenth Amendment Equal Protection Clause claims may proceed against Semple, Rinaldi, Bruno, Shamma, Erfe and Laffargue in their individual capacities for monetary relief and in their official capacities for declaratory and injunctive relief.

**Within twenty-one (21) days of this Order**, the U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on defendants Semple, Rinaldi, Bruno, Shamma, Erfe, Laffargue, Valeriano, Williams, Mataos, Milio, Yaharey, St. John, Tello, Ellis, Edwards, Sterno, Lawler, Viska, Robinson, Lopes, King, Buckland, and Whitehead in their official capacities by delivering one copy of the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT, 06141.

The Clerk of Court shall verify the current work addresses for defendants Semple, Rinaldi, Bruno, Shamma, Erfe, Laffargue, Valeriano, Williams, Mataos, Milio, Yaharey, St. John, Tello, Ellis, Edwards, Sterno, Lawler, Viska, Robinson, Lopes, King, Buckland, and

Whitehead with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the **thirty-fifth (35) day after mailing**.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him or her, and the defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

Defendants Semple, Rinaldi, Bruno, Shamma, Erfe, Laffargue, Valeriano, Williams, Mataos, Milio, Yaharey, St. John, Tello, Ellis, Edwards, Sterno, Lawler, Viska, Robinson, Lopes, King, Buckland, and Whitehead shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them**.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

Discovery, under Fed. R. Civ. P. 26–37, shall be completed **within six months (180 days) from the date of this order**.  Discovery requests need not be filed with the court. All motions for summary judgment shall be filed **within seven months (210 days) from the date of this order**.

**SO ORDERED** this 6th day of October 2017, at Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE